[Civ. No. 19861. First Dist., Div. Two. Dec. 21, 1961.]

M. MILLER COMPANY, Plaintiff and Appellant, v. DAMES
& MOORE, Defendant and Respondent.

306

Tinning & DeLap and Robert Eshleman for Plaintiff and Appellant.

Bronson, Bronson & McKinnon for Defendant and Respondent.

SHOEMAKER, J.—Plaintiff M. Miller Company appeals from the judgment entered in favor of defendant Dames & Moore, a partnership, upon the granting of its motion for summary judgment.

Plaintiff brought this action against defendants Central Contra Costa Sanitary District; Brown & Caldwell, a partnership; and Dames & Moore. The complaint alleges that on May 8, 1958, plaintiff entered into a written contract with defendant district, whereby it agreed to construct a portion of an outfall sewer system in accordance with certain detailed plans and specifications referred to in the agreement; that Brown & Caldwell, a firm of civil engineers, was employed by the district to prepare the plans and specifications for construction of the sewer system; that Dames & Moore, a firm of soil engineers, was also employed by the district and by Brown & Caldwell to conduct certain soil tests in the area of the proposed construction; that Dames & Moore conducted these tests in such a negligent manner that its soil report failed to disclose certain unstable material underlying the construction site. Plaintiff further alleged that this soil report was intended by Dames & Moore to provide information for prospective bidders such as plaintiff, and that this report was made available to bidders and was examined by plaintiff prior to making its bid; that as a direct and proximate result of the negligence of defendant Dames & Moore, plaintiff's bid, on which the contract was based, was $918,434 less than the actual cost of installing the pipe in the least expensive manner in which the project could safely be accomplished; and plaintiff prayed damages in this amount from defendant Dames & Moore.

Defendant Dames & Moore filed no answer to plaintiff's complaint, but moved for summary judgment in accordance with Code of Civil Procedure, section 437c, alleging that plaintiff's action against it had no merit. In support of its motion for summary judgment, Dames & Moore filed affidavits stating that it had never been a party to any agreement with plaintiff, and further stating that plaintiff's agreement with the district specifically provided that plaintiff was not to rely on the reports made available to it but was to investigate the site conditions for itself. Plaintiff elected to file no opposing affidavits, and summary judgment was thereupon granted in favor of defendant Dames & Moore.

Appellant's sole[1] contention is that the granting of the motion for summary judgment was improper inasmuch as there remained triable issues of fact that were not disposed of by the affidavits of respondent.

[1]Appellant originally also contended that respondent's motion was prematurely made, but this contention was withdrawn at oral argument.

We have therefore examined respondent's affidavits in support of the motion to determine whether or not they state facts which, if proved, would be sufficient to sustain the judgment in its favor. (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 261-263 [223 P.2d 244].)

Since there were no counteraffidavits filed, we accept as true the facts stated in the affidavits of the moving party. (*Coyne* v. *Krempels, supra.*)

Respondent's affidavits seek to establish that as a matter of law respondent has a complete defense to appellant's cause of action against it for the reasons that (1) there is no privity of contract between the parties, and (2) that under the contract between the district and appellant respondent is exempt from any liability for negligence to appellant.

As to the first asserted ground of defense, admittedly there is no privity of contract between the parties. However, as has most recently been decided by our Supreme Court, the fact that there is no privity of contract between parties does not necessarily result in no liability on the part of a negligent party to one injured thereby. In *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], it was held that a third party not in privity with the defendant could still recover damages for the defendant's negligent performance of a contract where the circumstances were such that the transaction was intended to affect the plaintiff and injury to the plaintiff was foreseeable. In *Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 588 [15 Cal.Rptr. 821, 364 P.2d 685], the *Biakanja* holding was reaffirmed, with the court stating: ". . . the determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm." In the present case, respondent's affidavits do not state that it had no knowledge of the fact and did not intend its soil report to provide information for prospective bidders such as appellant. Nor do they declare that the work was properly and carefully done; rather, all they allege in this one phase of the matter is lack of privity. In this situation, the question of whether or not appellant's claim was within the *Biakanja* rule should

have been left to the trier of fact, for the uncontradicted allegations of appellant's complaint, if proved, would support the conclusion that the transaction was intended to affect appellant, that harm to appellant was readily foreseeable, and that appellant's injury was the direct result of respondent's negligence.

 As to the second asserted ground of defense, the contract speaks clearly and we do not believe in respondent's favor. Respondent contends the contract between the appellant and the district specifically provided that appellant was not to rely on its soil report but was to make its own independent investigation and that this being the case, it owed appellant no duty and an action for negligence against it will not lie.

The contractual provisions upon which respondent relies are duly set forth in its affidavit, as follows: "*1-01. Examination of Plans, Specifications and Site of Work.* The bidder shall examine carefully the site of the work contemplated and the proposal, plans, specifications, and contract forms therefor. It will be assumed that the bidder has investigated and is satisfied as to the conditions to be encountered, as to the character, quality and requirements of these drawings and specifications.

"*3-08. Liability of District Officials.* No District official, or the Engineer,[2] or any authorized assistant of any of them, shall be personally responsible for any liability arising under this contract.

"*6-19. Errors and Omissions.* If the Contractor, in the course of the work, finds any errors or omissions in plans or in the layout as given by survey points and instructions, or if he finds any discrepancy between the plans and the physical conditions of the locality, he shall immediately inform the Engineer in writing, and the Engineer shall promptly verify the same. Any work done after such discovery, until authorized, shall be done at the Contractor's risk.

"*11-11. Soil Borings.* Test borings and pits to determine soil characteristics along the line were made by the firm of Dames & Moore . . . Reports of the field and office work are available for study at the office of Brown and Caldwell . . . The District does not, however, guarantee the accuracy of the data thus presented, and should the conditions be found to differ from these indicated or discussed in the reports, the

---

[2]The firm of Brown & Caldwell is apparently designated the "Engineer" throughout the contract.

Contractor shall have no claim against the District or the Engineer.

"SECOND: That said Contractor agrees to . . . be responsible for and hold the Central Contra Costa Sanitary District free and harmless from all loss or damage arising out of said work, or from the action of the elements, or from any unforeseen difficulties or obstructions which may arise or be encountered in the prosecution of the work until the acceptance thereof by the Owner . . ."

The above quoted portions of the contract reveal that the parties intended the liability of the district and its engineer to be limited. Although the district made certain reports available to appellant, nevertheless, under the contract, appellant was required to make its own independent examination, and the district was not to be held liable for any inaccuracies in these reports. It must be remembered, however, that this contract was one between appellant and the district, and respondent was not a party thereto. The fact that appellant chose to assume certain responsibilites and to waive certain liabilities in favor of the district and its engineer does not necessarily result in a determination that its rights and duties as against respondent were the same. We note that the only clause of the contract specifically referring to respondent concludes with the statement that inaccuracies in respondent's data shall result in no liability to "the District or the Engineer." (Clause 11-11, *supra*.) No mention whatever is made of respondent's liability for inaccuracies.

 Carrying its argument a step further, respondent contends that appellant agreed not to hold the district, the engineer, "or any authorized assistant of any of them" liable under the contract. (Clause 3-08, *supra*.) Respondent urges that it must be deemed an "assistant" because it was employed as an agent of the district. This argument has no merit. The rule is well established that in the interpretation of contracts, "a word of general meaning used after words of a specific class shall be deemed to include only things that refer to and are akin to the specified class." (*Nattini* v. *Dewey* (1950) 96 Cal.App.2d 545, 548 [216 P.2d 46].)

 The application of this rule to the clause in question leads to the conclusion that the term "assistant" merely refers to those employees of the district and the engineer who might perform certain duties for which the district and the engineer were responsible, under the contract. The word "assistant," as thus construed, merely extends the meaning

of the "District" and the "Engineer" to include all subordinate personnel who are employed by either office and who perform certain tasks under the contract. In the absence of any indication that the term "assistant" was intended to have a broader meaning, it cannot be deemed applicable to respondent, who was employed as an independent contractor and who certainly cannot be considered as one of the subordinate personnel of either the district or the engineer. A reading of the several related provisions of the contract is entirely consistent with our conclusion that the parties never intended to include respondent within the term "assistant." Particularly would this seem true in view of the fact that respondent is specifically mentioned by name in a succeeding paragraph of the contract. (Clause 11-11, *supra*.) Had the parties desired to include respondent within their earlier reference to "assistant," we believe that they would have expressly so provided.

Even if the term "assistant" were deemed applicable to respondent, this provision of the contract would present no bar to the instant action. The clause in question undertakes only to relieve the assistant from "any liability arising under this contract." (Clause 3-08, *supra*.) The alleged liability of respondent to appellant in the instant action is not predicated upon any contractual obligation, but rather upon respondent's negligence in preparing a report which it knew would be consulted by prospective bidders, for as respondent itself declares, it was never a party to any agreement with appellant.

Respondent's affidavits leave unresolved the question of its liability to appellant for negligence, and the question of fact as to whether this particular case meets the requirements of the Biakanja rule.

Respondent has not set forth facts sufficient to sustain the judgment in its favor, and the summary judgment is reversed.

Kaufman, P. J., and Agee, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 14, 1962.